25-2045, Southern Iowa, United States v. Karl Dieudonne Council, we thank both Council for being willing to reschedule our argument to today. Hopefully making your Fridays easier was not all bad. Yes, yes, you're welcome. Good morning. May it please the Court. The core of this case is about relevant conduct, and when you have a large conspiracy, the type of conduct that you can hold a single defendant accountable for when their conduct in the conspiracy was quite limited to a single role. The District Court here at Mr. Dieudonne's sentencing erroneously concluded that his relevant conduct encompassed the entire scope of the scheme. So, of course, the determination for what is relevant conduct is different from the determination of what is the scope of the conspiracy that a defendant can be held criminally liable for. At sentencing, relevant conduct has to be foreseeable to the defendant, and the defendant must have agreed to jointly undertake the activity. So his challenge here against most of these sentencing enhancements rests on the contention that he either could not reasonably foresee the conduct, or that he did not agree to jointly undertake all of the conduct. So starting with the sentencing enhancement for misrepresentation as a government agency, his primary contention is that he could not reasonably foresee that his co-conspirators would hold themselves out as members of law enforcement. There is no evidence that he had any reason to know the details of how they were scamming the victims. The evidence really showed that he was in charge of the money side of things, and while he certainly could reasonably foresee that misrepresentations would be made, it's not a normal part of a scam to just assume that the misrepresentation would be that the scammers are members of law enforcement. So as someone who is just in charge of the money, it was not something that he could reasonably foresee that those specific misrepresentations would be made. Counsel wasn't posing as law enforcement officers kind of central to the whole scam here? It was. It was really central to the scam. And so certainly for the other co-conspirators who were making the phone calls, they would of course have to know and understand what those misrepresentations would be. But for Mr. Dedone, the evidence really showed that he was in charge of some of the financial transactions, that he wasn't in contact with the victims. There was some evidence that his phone was used to contact two of the victims, but it's not known who was actually making that phone call. There's not evidence that he was in the room with the other co-conspirators when they were making these phone calls. And the case also kind of directs the court to look at whether or not the defendant benefited in a way that would make them aware of what was going on. And as far as we know, his benefit was just getting a payout at some point. We don't even know how much he got paid. So there wasn't a particular benefit to him from the scams that would have made him think that this specific misrepresentation was being made. If the court doesn't mind, I'd like to move on to the enhancement regarding the loss amount. Here, the contention is less about foreseeability and more about what activity did he agree to jointly undertake. Here, the government didn't provide sufficient evidence that he agreed to jointly undertake all of the scam activity. There are specific scams that we know he was directly involved with. So those would be the Iowa scams, and then there was evidence that he booked an Airbnb for the scam against victim L.B. in California. But as far as the other scams, what we know is that there was money in his Wells Fargo account. The connection between that money and the fraud scheme is unclear. The court determined that that money certainly was related to the fraud scheme. But our contention is that really there's no evidence directly connecting the funds that were in the Wells Fargo account to this specific fraud scheme. Certainly, there was no evidence that it was connected to legitimate income. But what exactly that money came from, whether it came from this fraud scheme, is unclear. And so we would ask that the court find that it was clearly erroneous for the district court to say that that money was proceeds from this fraud. But even if the court were to say that that money is proceeds from the fraud, what we have here is evidence that he handled maybe about half of the money that was taken from the victims. So there really isn't evidence that he was aware that there were other scams going on. His agreement to participate in other scams other than the ones that directly led to money coming into the account, there really isn't evidence of that. We know that he was in contact with the leader of those scams, Mr. Weatherspoon, but it appears that that contact was primarily about trying to get contraband into the prison and not necessarily about planning out the schemes. So the evidence that that entire loss amount for all of the scams, I think that's pretty thin to connect him to, to all of the scams and not just the ones where we have some information that suggests that he knew about those or that he was participating or involved in that in any way. So therefore, we think that the appropriate loss amount should be $169,720. That's if you look at just the amount taken from the intended losses from the Iowa victims and L.B. in California. But didn't the evidence show that he handled funds exceeding the total loss you're attributing to the eight victims? Yes. So that's kind of the alternative argument of saying, well, if you find it's clear, if you find that the district court's determination that those funds were connected to the scheme, then the loss amount still should not be the amount that the court found. It should be the amount that was in his account plus the amount from the Iowa victims. So that would total $313,850, which is still below the amount the court found, which was over $550,000. And so with our lower amount that we're requesting, which is the $169,720, or as I was about to say, the $192,061, which is the Iowa L.B. and the cryptocurrency, then that should have been the 10-level enhancement as opposed to the 14-level. Or if you're going with the amount that was in the Wells Fargo account plus the Iowa victims, then that comes out to over $313,000. And that should have been a 12-level enhancement as opposed to a 14-level. So it's the same logic for the number of victims enhancements. Really, we think that the evidence only shows that he was involved with 8 victims, so he should not have received an enhancement for there being over 10 victims. And similar logic for the restitution. The restitution is supposed to be calculated in a very similar way to how the loss amount is calculated, but of course we're only looking at what the direct and proximate or the losses that were directly and proximately caused by the defendant's conduct. And so when we're doing a very similar evaluation, we should only be looking at the two victims who submitted a request for restitution who were within those 8 victims that he was directly involved with. If the Court doesn't mind, I'd like to reserve the remainder of my time for rebuttal. You've written quite a few fraud laws and restitution cases over the years. What of our cases that does a detailed analysis of the government's burden and the evidentiary standard? In your view, what's the best case for these facts? I think maybe the best case for these facts within the Eighth Circuit might be Adujumo. That's 772 F. 3rd, 513. And the discussion of what was going on with the defendant at Aneirin in that case does kind of have – it does kind of resemble that. I also did submit a 28-J letter yesterday regarding an out-of-circuit case. That case, in my view, ignored the deference most of our other cases say is appropriate. So, I mean, we're looking for – certainly the deference is high when you're looking at a clear error standard for reviewing factual findings, and we'll – we agree with that. But I do think that the Court in that case still does a sufficient analysis of the facts, and even under those same facts, even with the high clear error standard, I think that that case is helpful. Are there any other questions? Thank you. Okay. Thank you. Ms. Sedman? Good morning. May it please the Court? First of all, the government would submit that – I think it's very clear here that the government also relied on relevant conduct, so that really is the issue in this case is whether or not the enhancements apply based on – It would help if you'd speak up at this point. I'm sorry. I'm sorry. With the actual facts of the case, the actions of Mr. Dudone, and then also, in addition to that, what the relevant conduct was. In regards to misrepresentation, I'll start where counsel started unless the Court has specific questions. There's just a couple things that the Court relied on that the government wanted to point out regarding misrepresentation. First of all, as the Court already addressed, this was the central theme of the fraud, was the misrepresentation of law enforcement in the court system in all of the frauds. And so Mr. Dudone, I think it was represented that he only had a role in the money, but there was evidence that the district court relied on that there were Airbnbs that were rented, that Mr. Dudone traveled with some of the co-defendants in Iowa and elsewhere, that he stayed in the Airbnbs with the co-defendants. Well, counsel, that might show that he was aware of the Airbnbs, but does that make him aware of the fact they were representing themselves as law enforcement officers? It's important to distinguish a person that's sitting behind a computer moving money around as opposed to a person that's boots on the ground, if you will, or actually with the other people that are involved in the conspiracy. For example, the district court determined that Mr. Dudone was picked up on September 27th of 2023 in Des Moines by Mr. Scorza. There were four people in that vehicle once they picked up Scorza, and they traveled on to Iowa City, and there were scams that occurred. So four people in the car once scams were occurring. Also during that time frame, Mr. Dudone's phone was used, the TextNow number, to contact H.E., who was one of the victims. So there was direct interaction between him and those who were misrepresenting themselves as law enforcement officers? Arguably, yes. The court could find that based on the evidence that was unobjected to and included in the pre-sentence report. So you have that, plus there was also another person that was communicated with by Mr. Dudone, by that same TextNow number, prior to him coming to Iowa. So the argument that someone else used his phone when he wasn't even in Iowa doesn't actually mesh with the facts that were included in the pre-sentence report. So there was evidence in the government's opinion that Mr. Dudone was involved on some level in the scamming, which would be based on the misrepresentation because that was the entire basis for the conspiracy. So there's that with the misrepresentation, and it's the government's argument that this activity was all jointly undertaken by Mr. Dudone as well as the other co-defendants. You're still talking too fast and looking down for me. I'm sorry, Your Honor. So to move on to the last, the first thing the government wanted to do. This was a guilty plea, right? Yes, Your Honor. What did he admit in terms of knowledge of the conspiracy? I assume it was a conspiracy count, right? Yes, Your Honor. So he admitted at the time of the plea to being involved in the Iowa-based scams. Well, okay, it's got to be more than that. It's got to have some knowledge of some bad purpose of this scam. Sure. He knew that there wasn't a legal purpose. It was a narrow factual basis. But he did know there was a conspiracy to commit wire fraud with the intent that they were defrauding victims. And he came to… There were no details as part of that plea. Correct. Correct. Just to talk about the loss a little bit. First of all, the government would acknowledge that the calculations by the district court in review of refiguring the numbers that do and don't got the numbers right. The district court did have the numbers off a little bit if you go through and look at the pre-sentence report. But it's the government's opinion that it's harmless because the intended loss was still that 14-level adjustment because it was still over a million dollars. In looking at the loss… And based on what? Did the PSR calculate intended loss? The PSR did calculate intended loss. And then there was just, for example, in the sentencing, it appeared that the judge included the same victim twice in her calculation. So there were just a couple things when you go back and look at it that does show that the amount that do-don't reported in the factual part of the brief was accurate. But again, the government would submit that it's still harmless. As far as the loss, though, it's important for the court to also know that, first of all… What's an 8th Circuit harmless fraud loss error case? The government doesn't have that in front of me at this moment. Well, I've never heard of such a thing. Unless it doesn't change the guidelines. It doesn't because when you go and calculate the loss, it's intended or… Or she just went from blank to blank to 12. The intended loss was over a million dollars. And so that satisfied the level 14. Well, what were the… Where are the errors then calculated? I didn't… I haven't studied the sentencing record, but I… It sounds like you're speaking generally and leaving the details under the rug. Which is not uncommon in fraud loss cases. No, the court was correct that the intended loss was over a million dollars, which justifies the level 14. What she also… What the district court determined the loss was more than for the Iowa victims when the actual loss was $67,720. But I thought you said any intended loss error was harmless. Correct. So what's the error? Before the million or after? That is… The error is not part of the intended loss. It was an issue of accounting actual loss for some of the intended loss. Because when you go through and you look at… You listen to what the victims had to say. They gave some money on some of the occasions and then they went to report to law enforcement before all of the money was turned over. I'm more concerned on the restitution on this issue.  Because I… Were any of the victim loss claims for purposes of restitution challenged? No. Factually? Factually challenged, no. The issue for Mr. Doudon was his argument as to restitution is that he should only be held accountable for the Iowa victims that made restitution and the one California victim. And the government asserted that based on the conspiracy, he should be accounted for all of the victims as it relates to this case. Based on the… A lot of this has to do with, first of all, if you look at the amount of money that was involved in the account, there was cash deposits, Visa transfers, Zelle transfers, $100,000 in cash refining, Bitcoin, and cryptocurrency. One thing that the government wanted to point out today to you is that if you look at some of these victims that Mr. Doudon doesn't want to be accountable for, is if you look at EA in paragraph 71 and 73, that was green dot money that was collected. In VC in paragraph 84, that was $10,800 in CoinStar purchasing crypto. That happened on November 20th of 2023, one day after Mr. Doudon was talking to Mr. Weatherspoon about cryptocurrency. Then there was $20,000 in paragraph 94 deposited in an ATM to an account. And then on paragraph 109, there was $11,120 in prepaid Visa cards. And then in paragraph 117… You're running away. Weren't there financial institution victims? No? Or are they all… Personal victims. Person victims. Yes. Okay. So I guess the government's point is that if you go and you look at what the judge determined in this case, is that all the victims were related based on Mr. Doudon's role in this case was partially hiding the money, restructuring the money, distributing the money so that as soon as this money was collected from members of the conspiracy, it's taken by him and immediately put in an ATM or other ways so that it's much more difficult for law enforcement to find the money or for victims to report the money. And so the point is that all these ways that he was using the various platforms to conceal money was also part of the conspiracy that's detailed in the unobjected two paragraphs of the pre-sentence report. Can I ask one more question? Sure. With regard to the special condition that's on appeal, it's my understanding the government concedes a plain error occurred. Is that correct? Correct, Your Honor. All right. If no one has any other questions, the government would ask the court to affirm the enhancements imposed by the court. Thank you. Very good. I'll give you half a minute for above. I would just simply say that regarding the government's argument on the misrepresentation enhancement, the fact that he was present at some of these scams does not necessarily mean that he was present when the scams were actually occurring just because he was going to the locations where the scammers were, I think, residing while they were organizing all this doesn't mean that he was actually listening in on the phone calls that were made or there during that. Wouldn't it be a reasonable inference, though? I don't know if I would say it's a reasonable inference. I think our argument would be that there should be a little bit more information for the court before they can make that inference. At this point, Mr. Judone would request that this court reverse and remand for resentencing and also vacate his special condition. Thank you. Thank you, counsel. The case has been well-briefed and argued. Again, thank you for accommodating our scheduling request. Hopefully we saved you some bad weather between here and there. Thank you.